HORATIO N. WATERMAN *vs.* THE A. & W. SPRAGUE MANUFACTURING COMPANY AND ANOTHER.

New London Co., Oct. T., 1886. PARK, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, Js.

The defendant, a manufacturing corporation located in the state of Rhode Island, in 1873, being unable to meet its liabilities, made a trust deed of all its property for the benefit of creditors who should within nine months assent to the deed and accept trust notes secured by it, and later made a general assignment in insolvency. The property was largely real estate in Rhode Island, but it embraced certain mill property in this state. The Rhode Island courts sustained the deed and assignment as valid, but this court held them void as against non-assenting creditors. The plaintiff was a creditor of the corporation, and attended a meeting of the creditors at which the making of the trust deed and trust notes was considered and was recommended without any dissent. He however took no part in the proceedings, and did not afterwards declare his assent by accepting the trust notes. He was influenced to this course by the advice of the treasurer of the corporation and by his promise that his claim should be otherwise paid. He knew that the trustee under the trust deed had taken possession of the property, and was applying it to the purposes of the trust, but took no action until 1883, when he got judgment against the corporation for his debt in the courts of Rhode Island, and in 1883 brought a suit in this state on the judgment and attached the real estate of the corporation in this state. Held that the plaintiff was not to be regarded as having by implication assented to the trust deed.

Nor had he been guilty of such laches as estopped him from availing himself of any legal remedy that he was able to employ for securing his claim.

Laches is not to be imputed to a suitor in a court of law who has not brought himself within the statute of limitations.

And where such a suitor, having the right to do so at his election, resorts to a court of equity, he will not be affected by imputed laches in that court.

And the fact that he did not assent to the trust deed because of a promise of the treasurer of the corporation that his claim should be paid, was not to be made the basis of an assumption that he intended to abandon his right to any other remedy.

Knowledge that the trust deed, held good by the courts of Rhode Island, was held void by our courts, was not to be imputed to the plaintiff.

Where a non-resident debtor owns attachable property in this state, the statute of limitations does not run in his favor. His personal presence is necessary, so that a judgment *in personam* could be recovered against him.

The attachment of the property of a non-resident in this state is in the nature of a proceeding *in rem*, binding on the property, but not sustaining a judgment against the person of the debtor.

In the suit brought by the plaintiff in Rhode Island the trustee had moved the court to allow him to appear and defend, that he might set up the statute of limitations against the claim, but his motion was denied. Held that this fact could not affect the present case, because (1) the claim was not barred by the statute in this state, and (2) the Rhode Island judgment was of no importance as the plaintiff could maintain a suit here on his original cause of action.

The trustee had expended a large sum in repairs on the property in this state several years before it was attached by the plaintiff, but it did not appear that in doing it he was influenced in the least by the consideration of the plaintiff's assent or non-assent to the trust deed, nor did it appear that the expenditure was not repaid by the use of the property. Held that the rights of the plaintiff were not affected by the fact.

[Argued May 4th, 1887 (as of Oct. Term, 1886,)—decided Jan. 13th, 1888.]

SUIT for the foreclosure of a judgment lien upon real estate of the A. & W. Sprague Manufacturing Company; brought to the Superior Court in New London County. The company was a Rhode Island corporation and in 1873 owned the real estate in question which was situated in this state, and in that year made a trust deed of this with its other property to the defendant Chafee, as trustee, for the benefit of assenting creditors, and afterwards a general assignment in insolvency to the same trustee. These conveyances, with all the facts attending them, and the facts with regard to the proceedings of the trustee under the trust, are given in the report of the case of *Greene* v. *Sprague Manufacturing Co.*, 52 Conn., 330. In the previous case of *De Wolfe* v. *Sprague Manufacturing Co.*, 49 Conn., 282, this court had held the trust deed and assignment void as against non-assenting creditors. The plaintiff was a creditor, claiming not to have assented to the trust deed and assignment, who obtained a judgment in Rhode Island against the company

for $12,209 and costs of suit, and afterwards, in an action upon that judgment, a second judgment in this state, upon which he filed a judgment lien upon the real estate in this state that had been attached in the suit. The present suit was brought to foreclose that lien. The court below found the facts and reserved the case for the advice of this court. The case is fully stated in the opinion.

*J. Halsey* and *A. Tenny*, for the plaintiff.

1. The plaintiff has not assented to the deed and assignment. He is not an assenting creditor in fact. He never assented to, took part in, or approved of the deed, nor did he ever own or hold any of the renewal notes issued under it by Chafee, or offer to release or extend his claim under the provisions of the deed or assignment. Nor will the law presume an assent. It is well settled, perhaps, that "when the trust is for the benefit of all, and no release or other condition is stipulated for or on behalf of the debtor, but the property is to be distributed equally among all the creditors, the assent is to be presumed." *Halsey* v. *Whitney*, 4 Mason, 206. But when the assignment or conveyance is conditional, as when the assignee's liability is limited, there can be no assent presumed; it must be proved. *Leeds* v. *Sayward*, 6 N. Hamp., 83; *Spinney* v. *Portsmouth Hosiery Co.*, 25 id., 18; *Brown* v. *Warren*, 43 id., 430; *Stewart* v. *Spencer*, 1 Curtis, 157, 166. An assignment not made for the benefit of all the creditors, is not such an assignment as can raise the presumption of assent. Burrill on Assignments, § 285, and cases cited; *Nelson* v. *Dunn*, 15 Ala., 502; *Evans* v. *Lamar*, 21 id., 333; *Rankin* v. *Lodor*, id., 380; *Hurd* v. *Silsby*, 10 N. Hamp., 108; *Fall River Iron Works Co.* v. *Croade*, 15 Pick., 11; *Tompkins* v. *Wheeler*, 16 Pet., 118. The deed contained within itself the conditions of assent. "These conveyances were for the benefit only of those who should accept, and they were required to manifest their acceptance by doing certain things." *Greene* v. *Sprague Manuf. Co.*, 52 Conn., 372. It follows, therefore, that there is no presumption of law of his assent.

2. The defendant Chafee claims that the plaintiff is estopped from now enforcing his claim because he, as trustee, expended $250,000 in repairing the dam of the Baltic mill, and that the plaintiff was guilty of laches by reason of delay in prosecuting his claim and in attacking the trust deed. In reply to this the plaintiff says: (1.) The plaintiff cannot be held to a greater degree of diligence than could reasonably be expected from one in his condition in life, and the whole circumstances of the case must be taken into consideration. (2.) There is no evidence that he had any knowledge that the repairs were made by the trustee, and without knowledge he could not have acquiesced in or approved of them. (3.) A fair construction of the trust deed would not have given the trustee authority to make the repairs. (4.) The trustee, in his answer, acknowledges that, at the time of making the repairs, creditors to the amount of $115,000 had refused to accept notes under the trust deed and assignment and had not approved of or acquiesced in the same. By the necessities of the case he knew that no notes under the trust deed or assignment had been issued to the plaintiff and that he had never assented in fact to the deed or assignment. These being the facts, the plaintiff cannot be estopped. The trustee presumably had the benefit of the expenditure in the increased value of the property. He has also had the rents and income of the property, which without such expenditure he could not have had. Further, estoppels of this kind are never allowed except when the party has been injured by the acts or conduct of the party whom he seeks to estop. It does not appear that Chafee is not abundantly protected for his expenditure in the value of the property over and above the incumbrance of the plaintiff's judgment lien. *Fawcett* v. *New Haven Organ Co.*, 47 Conn., 227; *Hull* v. *Hull*, 48 Conn., 257. But it is also claimed that the plaintiff, by reason of his delay in attacking the trust deed and bringing his suit, is in equity estopped from now doing it. In reply to this, we claim that the courts have never prescribed any specific period in which creditors shall bring suit, as applicable to every case, leav-

ing each case to be governed by its own peculiar circumstances. *Twin Lick Oil Co.* v. *Marberry*, 91 U. S., 587. The plaintiff did all that was in his power to do to collect his claim, except to demand the trust notes of Chafee. This would have made him an assenting creditor. It would have been useless to bring suit in Rhode Island against the Sprague Mfg. Co., as all its property had been assigned by a deed which the Rhode Island courts had decided to be valid, as to both assenting and non-assenting creditors. *Austin* v. *Sprague Manf. Co.*, 14 R. Isl., 464. The plaintiff was a citizen of Rhode Island. He had no knowledge, and is not presumed in law to have knowledge, that the trust deed and assignment were void under the laws of Connecticut, so far as they affected title to real estate situated in this state. *Bank of Chilicothe* v. *Dodge*, 8 Barb., 233; *Merchants' Bank* v. *Spalding*, 9 N. York, 53; *Stedman* v. *Davis*, 93 id., 32.

3. It is claimed that the original obligation, which was the foundation of this suit, was barred by the statute of limitations, and as this is the first suit in which the trustee has been made a party, he can now set up that defense. But he has no right, as a party in this court, except as he gains such right by virtue of the trust deed and assignment; and as our Supreme Court has decided the deed and assignment to be void as against non-assenting creditors, it is plain that if the plaintiff be a non-assenting creditor, Chafee has no right even to raise the plea. It would be absurd to claim that a grantee under a void and fraudulent deed could raise the plea of the statute of limitations. If the plaintiff be a non-assenting creditor it seems that he must stand in reference to the property attached as if the deed had never been made. But even if Chafee, as trustee, has a right to raise the plea and the plaintiff is a non-assenting creditor, the Sprague Manufacturing Company had a right to make a new promise, and so kept alive the claim. To take the case out of the statute of limitations there may be either an acknowledgment of the debt, a new promise, or part payment. (1.) The company has acknowledged the debt. Amasa Sprague was treasurer of the company during the whole time. While treasurer, and in

the employ of Chafee as trustee, he ordered the account to be made up and placed upon the books of the company. Of the fact that such entries were made, Chafee had actual or constructive notice. (2.) The company has promised to pay the claim. Amasa Sprague, as treasurer, promised to pay the claim within six years prior to the bringing of the suit. On account of his promise and advice, as treasurer, the plaintiff has never taken any trust notes issued by the trustee. These acts of the treasurer were binding upon the corporation. *Neal* v. *Cary*, 5 Ga., 239; *Fulton Bank* v. *N. York & Sharon Canal Co.*, 4 *Paige*, 127; *Mount Olivet Cemetery* v. *Shubert*, 2 Tenn., 116; *Perkins* v. *Bradley*, 20 Vt., 346. Recognizing a claim against a corporation for work and labor done is directly in the line of the treasurer's business, and in this case was only common honesty.

4. The original judgment, upon which this complaint is based, is a personal action, not obtained by fraud or collusion, and is conclusive as against the Sprague Manufacturing Company and all third persons. The plaintiff brought his suit in Rhode Island on his claim for work and labor done for the Sprague Mfg. Co., and recovered judgment against that company. That judgment was re-affirmed in this state. The defendant Chafee now seeks to inquire into the validity of the claim on which the original judgment was rendered. In other words, he seeks to re-try this case again on this point. This he cannot do. *Sidensparker* v. *Sidensparker*, 52 Maine, 481; *Candee* v. *Lord*, 2 Comst. 269; *McPherson* v. *Cunliff*, 11 Serg. & R., 422.

*C. E. Perkins*, for the defendant Chafee, trustee.

*First.* The plaintiff is not, as against Chafee, such a judgment creditor that he can maintain this complaint, which is in substance a bill to set aside the conveyances to Chafee on the ground that they were fraudulent as to the plaintiff.

1. It will not be disputed that, to enable a creditor to bring an action to set aside a conveyance of the debtor as fraudulent against him, the creditor must first obtain a judgment against his debtor upon the claim. Bump on Fraudu-

lent Conveyances, p. 535, considering this question says:—
"Such right does not exist" (that is, the right to bring a
suit to set aside a deed claimed to be fraudulent), "until he
has bound the property by judgment, or by judgment and
execution, as the case may be." Burrill on Assignments,
§ 503, says:—"None but judgment creditors can attack an
assignment." See also *Owen* v. *Dixon*, 17 Conn., 492. As
this judgment in Connecticut was founded solely on the
Rhode Island judgment, it is open to the same objections.

2. This judgment must be a valid one, not only as against
the grantor, but as against the grantee. It clearly would
not do to say that because the person claiming to be a cred-
itor had got a judgment which was not really founded on
an actual claim, but was obtained by fraud, collusion, mis-
take, or otherwise, the grantee would be bound by it. The
plaintiff must not only have a judgment, but he must be a
creditor when he obtained the judgment. It is well settled
that in such a suit as this the defendant may attack the
plaintiff's judgment, to which he was not and could not be-
come a party, by showing either that it was not founded
upon an existing claim, or upon one to which the defendant
had a defense which he did not make. In the suit in Rhode
Island in which the plaintiff obtained the original judgment,
Chafee attempted to appear to set up the defense which he
makes here, and the court refused to allow him to do so,
upon the express ground that the judgment would not be
binding upon him in such a suit as this. *Waterman* v.
*Sprague Manf. Co.*, 14 R. Isl., 43. See also *Inman* v. *Mead*,
97 Mass., 314; *Esty* v. *Long*, 41 N. Hamp., 103; *Warner* v.
*Percy*, 22 Verm., 155; *Sturges* v. *Beach*, 1 Conn., 507;
*McLoud* v. *Selby*, 10 id., 390. Many cases hereinafter cited
confirm these views. The ground of all these decisions is,
that after the rights of the defendant in the property con-
veyed have become vested, it would be unjust to allow any
act or omission of his grantor to affect them, and this prin-
ciple will become important in relation to another question
hereafter.

3. It was claimed in the Superior Court that even if other

defenses could be set up to attack the plaintiff's judgment, the fact that the statute of limitations had run against the claim could not be made by the grantee, because that is a personal defense, one which can be set up only by the debtor, it not being a defense which goes to the existence of the debt itself, but only to the remedy. This question is even more decisively settled by authority than the last one; the decisions are all one way; it is everywhere held that the right to plead this statute as a bar is only personal to the debtor so far as his own rights are concerned; when the rights of others are to be affected, they also can avail themselves of the statute, and the debtor cannot injure them by refusing to plead the statute, any more than by refusing to appear at all and allowing judgment to be taken by default. Wood on Limitations, 79. In accordance with this principle it has been held—(1.) That a second mortgagee may set up the statute of limitations against a first mortgagee, though the debtor has revived the debt of the first mortgage by a new promise. *Lord* v. *Morris*, 18 Cal., 482, 491; *McCarthy* v. *White*, 21 id., 495; *Grattan* v. *Wiggins*, 23 id., 16.—(2.) That an heir can attack a judgment rendered against the executor, on the ground that the statute had run, although the executor did not set it up. *Ferguson* v. *Broome*, 1 Bradf., 10; *Hoch's Appeal*, 21 Penn. St., 280; *Peck* v. *Wheaton's Heirs*, Mart. & Yerg., 353.—(3.) That creditors of an insolvent estate may set up the statute against any other creditors presenting claims. This is the daily practice in this state, and has always been allowed everywhere. *Kittera's Estate*, 17 Penn. St., 416; *Dawson* v. *Callaway*, 18 Geo., 573; *Shewen* v. *Vanderhorst*, 1 Russ. & M., 347.—(4.) Upon the precise point in question here, it has always been held that a person claimed to be a fraudulent grantee may set up the statute, even though the creditor has obtained a judgment. *McDowell* v. *Goldsmith*, 6 Md., 319; *S. C.*, 24 id., 214; *S. C.*, 2 Md. Ch. Dec., 370; *Schaferman* v. *O'Brien*, 28 Md., 565; *Warner* v. *Dove*, 33 id., 579; *McClenney* v. *McClenney*, 3 Tex., 192. It is found that the plaintiff's claim was an account on book for his personal services, which by the

Rhode Island statute, like ours, outlawed in six years. It accrued in 1873, and the suit in Rhode Island was not commenced until 1882, and the claim was one upon which the plaintiff, by the laws of that state, could not obtain a judgment. It would be monstrous to claim that because the Sprague Co., a dead, insolvent corporation, made no defense, and allowed the plaintiff to obtain a judgment, it should be binding upon all the other creditors, who are the only persons Chafee represents, and allow the plaintiff to take the property which their trustee holds for them, and have his claim paid in full.

4. But the plaintiff endeavors to avoid the force of this objection by claiming that this insolvent, dead corporation, long after its failure and the conveyance to Chafee, had removed the bar of the statute by a new promise, so that in 1882 he had a valid claim against it. To this we say that the corporation has never made any new promise, and that, if it had made one, it would not affect Chafee, its grantee. So far as we can find it has never been held that any officer of a corporation, merely by virtue of his official character, without something to show authority from the corporation, can renew a claim barred by the statute as against the corporation. It would be a very dangerous doctrine to hold. But if such a new promise would be valid as against the corporation, it is clear that neither such officer, nor the corporation itself, could remove the bar of the statute after it had attached, so as to revive the claim and make it valid as against third persons, so as to affect their rights in property before that time conveyed to them by the debtor. Wood on Limitations, 460; *McDowell* v. *Goldsmith*, 24 Md., 241; *Wood* v. *Goodfellow*, 43 Cal., 185, 189; *Schmucker* v. *Sibert*, 18 Kan., 104, 111; *N. York Life Ins. Co.*, v. *Covert*, 29 Barb., 435; *Day* v. *Baldwin*, 34 Iowa, 380; *Cason* v. *Chambers*, 62 Texas, 305; *Trustees of Almshouse Farm*, v. *Smith*, 52 Conn., 434. A conveyance by an insolvent debtor to a trustee for the benefit of creditors, puts the property conveyed, so far as it is needed for the payment of those creditors, as much beyond the power of the former owner as any

other kind of conveyance. Would it be pretended, even for a moment, that such a grantor could, after the conveyance, go around, and by new promises revive all old outlawed claims which ever existed against him, and so enable them to be brought in against his estate, and allowed *pari passu* with those who had provable claims at the time of his conveyance? I think no court would hesitate as to its decision upon that question; but what possible difference is there between this corporation by new promises reviving old claims which had been outlawed to enable them to be brought in against this property and receive a dividend, and reviving them to enable a suit to be brought to set aside the conveyance entirely and get their claims paid in full?

*Second.* If, however, we are wrong in this position, yet we claim that by his acts and laches the plaintiff has placed himself in such a position that this court will not exercise its equitable powers in his behalf. The court is asked to set aside a conveyance as constructively fraudulent, against creditors holding claims to the amount of eight millions of dollars, and to prevent them from having a dividend, in order that this claimant may have his whole debt paid in full. It is a thing which the court will not do if the plaintiff has not acted with promptness in availing himself of his rights, or has acted in such a manner that he may reasonably have been considered as acquiescing in the proceedings. In either event he will be considered in equity as being estopped from now making such a claim. No principle is better settled than that a person invoking the aid of a court of equity, must apply promptly and without unreasonable delay, especially where fraudulent conduct is charged; and this is particularly the case where in consequence of such delay acts have been done, or moneys expended, which would not have been but for such delay. *Banks* v. *Judah*, 8 Conn., 161; *Royal Bank of Liverpool* v. *Grand Junction R. R. Co.*, 125 Mass., 490; *Hayward* v. *National Bank*, 96 U. S. R., 611, 618; *Sullivan* v. *Portland & Kennebec R. R. Co.*, 94 U. S. R., 806, 811; *Brown* v. *County of Buena Vista*, 95 id., 157; *Hoyt* v. *Sprague*, 103 id., 613; *Harwood* v. *Rail-*

*road Co.,* 17 Wall., 78. In the case at bar there was the most extreme laches, and with no excuse. Waterman was present at the meetings of creditors and knew of all the proceedings now claimed to be void. He made no objection, brought no suit, took no steps to show his disapproval, for nearly nine years. In the meantime creditors to the amount of eight millions of dollars, indeed all the creditors but three, came in and took notes under the trust deed. Chafee expended $250,000 on the property now in question out of moneys which would otherwise have been distributed among these creditors. Moreover, this was not properly speaking a delay on Waterman's part, but rather an acquiescence. He did not then intend to try to set the deeds aside, and would have presented his claim and taken notes if he had not relied on the personal promise of Amasa Sprague to pay him in full; and it was not until he found that he could get nothing from him that he, at the eleventh hour, bethought himself of this claim against this property in Connecticut, obtained this writing from Amasa Sprague to remove the bar of the statute, and began for the first time to try to set this conveyance aside as fraudulent. There is no possible excuse or reason given for this delay, and if there could be a case where laches will prevent a recovery, it would seem to be in the case at bar. But there is another objection to the plaintiff's maintaining this action which is a sufficient defense in itself, or if the court should not so consider it, is yet an important element in the claim of laches. It is well settled that a person receiving notes under the arrangement provided for in the trust deed is estopped from attacking it as fraudulent. But many cases go further, and hold that any conduct on the part of a creditor which shows an approval of or assent to the conveyance is as effectual as receiving notes under it. *Ex parte Stray,* L. R., 2 Ch. App., 374, is exactly like this case. There a creditor was present when an assignment was prepared, and approved it, though he neither signed it nor received anything under it, and he was held to be estopped from claiming it to be fraudulent and so an act of bankruptcy. Lord CAIRNES,

on p. 378, says:—"It is well settled by a series of authorities, of which the case of *Ex parte Alsop* may be mentioned as the last, that a creditor who is a party or privy to a deed of the description mentioned in the statute, or who has acted in any way which could be equivalent to an assent, recognition or approval of the deed, cannot allege that the execution of the deed is an act of bankruptcy." This is a very late decision on this point, by one of the ablest of the English chancellors, and I submit that it is good law. The cases to which Lord CAIRNES refers fully sustain this doctrine, and they are in the same line with the cases referred to in *Greene* v. *Sprague Manf. Co.* See also *Rapalee* v. *Stewart*, 27 N. York, 310; *Phillips* v. *Wooster*, 36 id., 414; *Pell* v. *Tredwell*, 5 Wend., 698; *Hone* v. *Henriquez*, 13 id., 240; *Johnson* v. *Rogers*, 15 Bankrupt Reg., 1; *Ashley's case*, L. R., 9 Eq. Cas., 263; *Lawrence's case*, L. R., 2 Ch. App., 412; *In re Alsop*, 1 DeG., F. & J., 289; *Olliver* v. *King*, 8 DeG., M. & G., 110. All these cases and many others that might be cited, are decided, not upon the ground that a creditor took notes or received dividends under a deed, but upon the broader principle that the acts done conclusively showed the assent and approval of the creditor, which once given, it would be a fraud upon the other creditors to revoke. Now in this case Waterman was present at the meeting of creditors called by the Sprague Co. for the purpose of having them decide what course should be taken in relation to their property. The whole matter was discussed, and it was unanimously decided that this very trust deed should be adopted. It is true that the committee finds that Waterman took no part in the meeting, but he was present, and when a vote was taken did not vote *No*, and did not object in any manner, nor did he for more than eight years. Moreover, it appears that he not only acquiesced in the arrangement, but it is expressly found that the only reason that he did not then present his claim to the trustee and take the notes provided for by the trust deed, was that Amasa Sprague promised him that he would pay him, and advised him that it was not desirable for him

to take the notes. Were not the other creditors justified in believing that all the persons present at this meeting, which unanimously voted for this arrangement, approved of it? And would it not be an act of bad faith for this plaintiff, after having so acted, and after the trustee had received this property in Connecticut, held it for all these years, and expended $250,000 of trust funds upon it to make it salable, now to come forward, nine years afterwards, and for the first time try to get such an advantage of the other creditors, and get his claim paid in full with interest? Suppose, instead of holding this Baltic Mill property for nine years, Chafee had sold it to a third person, who was affected with knowledge that the trust deed was constructively fraudulent, and he had held it for eight years as his own, and expended half a million dollars on it, would it not have come clearly within the well known rule so well expressed by Lord COTTENHAM in *Duke of Leeds* v. *Earl of Amherst*, 2 Phill., 123 :—" If a party, having a right, stands by and sees another dealing with the property in a manner inconsistent with that right, and makes no objection while the act is in progress, he cannot afterwards complain." But so far as the creditors who have come in under the trust deed, and whose money Chafee had expended on this property, are concerned, they, and Chafee as representing them, stand in the same position as purchasers. Waterman cannot lie by and wait until all this money is expended on this property, which alone has given it its present value, allowing every one to suppose that he assented to the trust deed, and was relying on Amasa's promise, and then come forward and attempt, by getting an acknowledgment of his debt and a judgment against the company, and filing a judgment lien, to get the benefit of all this expenditure. It would be a gross fraud to allow it.

PARDEE, J. The plaintiff is a resident of the state of Rhode Island; he has never been a resident of this state. The A. & W. Sprague Manufacturing Company, the principal defendant, is a corporation chartered prior to 1873 by

the legislature of the state of Rhode Island, having its legal location in that state. It has never been a corporation resident in this state. Chafee, trustee, the other defendant, is a resident of the state of Rhode Island.

The A. & W. Sprague Manufacturing Company made default of appearance ; Chaffee, trustee, appeared.

The following are among the facts reported in the finding :—

In the fall of 1873 the A. & W. Sprague Manufacturing Company was unable to meet its liabilities as they became due. It had assets consisting of mills, factories, stock and goods in Rhode Island and other states, which were estimated to be worth about fourteen millions of dollars, and it was in debt about eight millions of dollars, but it was unable to turn its property into money so as to meet its debts. Thereupon it called a meeting of its creditors, by public notice in the newspapers, to consider its condition and advise what course it had better take, which meeting was largely attended by its creditors, and among others by the plaintiff. At this meeting, after considerable discussion, it was unanimously decided that it was desirable for the interests of the creditors that a trust deed should be made by the company, and a committee was appointed to prepare a form of deed and report it to the meeting, with the names of proposed trustees. The committee on the same day reported to the meeting, recommending that a conveyance in trust, substantially like that hereinafter mentioned, be made by the company, and recommending the names of certain trustees. This report was unanimously accepted by the meeting, and the committee was further instructed to see that such conveyance was made. There was no evidence that Waterman, the plaintiff, took any part in the proceedings of the meeting. They caused the deed to be carefully examined by lawyers of ability, but the persons they wished to have as trustees refused to act. Thereupon the proposed deed was executed by the company and others, and the name of Zachariah Chafee, the defendant, was inserted as trustee, without any objection by the committee, and the

deed was delivered and recorded in the land records of the town of Sprague in this state on the 2d day of December, 1873. On the 6th day of April, 1874, the company executed and delivered an assignment to more fully carry out the same object, which was recorded in the land records of that town, April 8th, 1874. Chafee, soon after the execution of the trust deed, took possession of all the property of the company, including the land now in question in this state, and has ever since held and occupied the same, and managed and carried on the business in the Baltic Mill, in the town of Sprague, and the A. & W. Sprague Manufacturing Company thereupon ceased to actively carry on any business.

Creditors of the company to the amount of over eight millions of dollars took notes under the provisions of the trust deed, which included all the creditors of the company, except those holding claims to the amount of about one hundred and fifteen thousand dollars, of whom the plaintiff was one. Chafee, as trustee, sold large amounts of the property so conveyed to him, and paid large sums as interest and dividends on the notes. In the year 1876 a considerable portion of the Baltic Mill property was swept away by a flood; and Chafee expended of the trust funds a sum exceeding $250,000 in the restoration of the property and repairs upon the same rendered necessary by the flood. Without this expenditure the property could not be used, but by it it was made as valuable as before the injury, and Chafee has received the rents and profits thereof from the time of his acceptance of the trust, in 1873, to the present time. At the time of this expenditure the plaintiff was residing in the state of Rhode Island, and there was no evidence that he knew that these repairs were made.

The plaintiff knew of the execution and delivery of the trust deed to Chafee, in December, 1873, and never objected to the same in any way, nor to the carrying out of the scheme, until he brought suit in this state and attached the property in question, in May, 1883. He did not come in under the deed and accept notes as therein provided, be-

cause Amasa Sprague, then treasurer of the company, prom-
ised him that he would pay his claim, and advised the
plaintiff not to take the trust notes for that reason.   The
plaintiff never received any of the notes nor agreed to
receive the same, nor has he ever received any moneys as
interest or dividend from Chafee, or offered to release or
extend his claim under the provisions of the deed or the
assignment.   These provided for the extension of claims for
the period of three years, with interest.

On the 22d day of April, 1882, the plaintiff, then and still
of East Greenwich in the state of Rhode Island, brought a
suit against the A. & W. Sprague Manufacturing Company,
in the Supreme Court of that state, for work and labor done
by him for the company from November 11, 1862, to No-
vember 11, 1873, and by the consideration of that court
recovered judgment in the suit against the company for
$12,209.57, on the 18th day of December, 1882.   The
defendant Chafee applied to the court to be allowed to
appear in the cause, and to set up and prove that at the time
the suit was brought it was barred by the statute of limita-
tions, but the court refused to allow him so to appear in the
manner and for the reasons stated in the report of the cause
in the Rhode Island Reports.

The plaintiff brought an action on the judgment to the
Superior Court in New London county by process of attach-
ment, bearing date May 3d, 1883, and returnable on the
second Tuesday of September, 1883, the judgment being the
sole ground of action therein, and by virtue of the process
caused to be attached as the property of the company, on
the 3d and 5th days of May, 1883, the several parcels of
real estate, situated in the town of Sprague, in New London
county, and in the town of Windham, in Windham county,
which are described in the plaintiff's complaint.   The pro-
cess and complaint were duly served and returned and
entered upon the docket of the court at its September term,
1883, and by continuance came to the term held at Norwich
on the first Tuesday of November, 1883, when the plaintiff
recovered judgment against the company for the sum of

$10,925.70—a part of the original judgment having been paid.

On the 14th day of February, 1884, this judgment being then unsatisfied, the plaintiff caused to be filed and recorded in the town clerk's office of the town of Sprague, and on the 18th day of February, in the town clerk's office of the town of Windham, a certificate in the form provided by statute, signed by the plaintiff's attorney, Allen Tenny, and thereby placed a judgment lien in favor of the plaintiff upon the several parcels of real estate attached to secure the amount of the judgment and the lawful interest thereon.

Chafee, trustee, makes the following among other averments by way of answer :—

That the judgment rendered in the Superior Court in New London county is void and of no effect against this defendant, because the same was rendered in a suit upon a certain judgment, theretofore rendered in the state of Rhode Island, in favor of said Waterman and against the A. & W. Sprague Manufacturing Company, upon a claim which accrued more than six years before the bringing the suit in which the judgment was rendered, and which by the laws of the state of Rhode Island was outlawed and invalidated, so that no suit could legally be maintained upon it ; that this defendant was not made a party to the suit, and therefore was not able to set up that defense thereto ; that he applied to the court in which said suit was pending for permission to be made a party thereto, and to make such defense, but his application was opposed by the plaintiff and denied by the court, upon the sole ground that the judgment would not be binding upon him, but that he would have the right in any proceeding against him founded upon the judgment to take advantage of the claim and make the defense mentioned, and to defend in such proceeding in the same manner as he desired to do in the original action ; and that the A. & W. Sprague Manufacturing Company neglected and refused to set up that defense, or any defense in the suit. And this defendant says that thereby the judgment in Rhode Island, and the judgment in this state upon

which this proceeding is founded, are both illegal and void as against this defendant, and the attachment in said suit and judgment lien filed therein are as to this defendant illegal, null and void. And this defendant avers that all the creditors of said corporation, except creditors to the amount of about one hundred and fifteen thousand dollars, to wit: creditors holding claims to the amount of eight millions of dollars, accepted notes issued under the trust deed and assignment, and approved of and acquiesced in the same, and, acting for them as such trustee, this defendant has ever since managed the property so conveyed, and expended large sums of money thereon, and especially in the year 1876 this defendant expended of the moneys so received by him as trustee, the sum of two hundred and fifty thousand dollars in repairing the dam and buildings of the property now in question, which had been injured and carried away by a flood, and which it was necessary to expend to make the property of value and to keep it in operation. All which proceedings were well known to the plaintiff, and were acquiesced in and approved of by him; and no action was taken by him to set aside the trust deed and assignment until the date of this complaint. And by reason of the premises the plaintiff is estopped in equity and good faith from now setting up and claiming that the trust deed and assignment are void as against him by reason of any provisions in the same and for the reasons alleged in his complaint. And this defendant avers that by reason of the laches and delay of the plaintiff in taking any proceedings in attacking the trust deed, and allowing this defendant in good faith to expend so large sums of money upon the property now in question, he is in equity and good faith barred from now attacking the trust deed; and at any rate the sums of trust money so expended upon the property by this defendant, with interest thereon, should be first repaid to the defendant out of the avails of the property before the plaintiff should have a decree to foreclose the same as prayed for by him.

These averments are to the effect that the plaintiff is

barred from the relief which he seeks because he actually consented to the possession of the property by the trustee under the deeds; that he constructively assented; that his claim has passed under the statute of limitations; and that laches is to be imputed to him. We think that neither of these objections is well taken.

The plaintiff has neither in fact nor in law assented to the execution and delivery of either the mortgage or deed of assignment to Chafee, trustee, or to the subsequent appropriation by him of the property by use and sale. The presence of the plaintiff at the meeting of the creditors has, under the circumstances, no legal significance. His debtor invited him and all its other creditors to a meeting to listen to a statement as to its financial condition and a proposition for a postponement of their right to enforce their claims. He attended, listened and went away, without speech or vote or other act. This he could do without putting in peril any right either as between himself and his debtor or between himself and any other creditor. Moreover, all of the creditors who are now represented by Chafee adopted measures, designed for the purpose of preventing the question of assent or non-assent by the plaintiff from resting upon his silence, or speech or vote or other act at that meeting or at any subsequent time, other than upon one specified act, required of him prior to a fixed date; performance or non-performance equally certain to be known to them. He was required to agree on or before the expiration of nine months from a specified date, to postpone for the period of three years his right to enforce his claim and accept from their agent, the trustee, the notes of the debtor, upon that time, with interest. They then notified him that unless he should on or before that day extend his credit in the manner and for the time named by them he would be barred from all right to or interest in the property which the debtor proposed to convey to a trustee for their benefit.

The proposition of necessity implied that they would give him nine months for consideration and determination; it bars out the idea that he was to be held to have irrevocably

fixed his condition in the matter by his silence at the meeting. They expressly conceded to him a period of subsequent probation during which he had their permission to repent of his silence and inaction and become an assenting and participating creditor with themselves. At the expiration of the time for deliberation they knew that he had not fulfilled the requirement made of him by them; that he had not assented. Thus they put upon him the stamp of nonassent which he has not since effaced. In view of this it is not for them to ask a court to presume that they believed he had assented.

Neither is the fact that Amasa Sprague's promise led him to refrain from the acceptance of the time notes of any significance in this matter. Previous to the expiration of the time for consideration and decision he had two possibilities of payment, one by Amasa Sprague, the other by the trustee. The fact that he regarded the first as worth pursuing is not to be made the basis of an assumption that he intended to throw away the other. Presumably a creditor retains and exhausts all possibilities and abandons none until payment. Soon after the execution of the deed the creditors took into their possession and use the entire estate of the debtor, valued at about fourteen millions of dollars, and since that time have sold a portion thereof and used the remainder, taking to themselves the proceeds of sales and profits of use to the total exclusion of the plaintiff. It would be a violent presumption indeed that he assented without any consideration whatever to their exclusive appropriation of this estate simply because he was testing another possibility. By the law of Rhode Island, the state of residence of all parties to this record, both the mortgage deed of 1873 and the assignment of 1874 are valid and effective instruments for the conveyance of property therein described to the defendant Chafee, trustee. He has a title to property in that jurisdiction beyond impeachment by any creditor. This fact was known to and acted upon by all. Action by the trustee, action and omission to act on the part of the plaintiff, are alike to be interpreted in the light

of this knowledge. The former held, used and sold the
property as owner by a title unassailable by the latter; held
it in spite of him, and not at all by any presumed assent or
permission on his part. The plaintiff knew himself to be
powerless to act; he refrained from any effort to appropriate
the property to his own debt because he thought that to be
impossible; his assent is that only which comes from silence
and inaction when he was unable either to dispute or act.
After the execution of the deeds there was neither necessity
nor place for either the trustee or the plaintiff to consider,
even, the question whether the latter had or had not as-
sented, would or would not assent. The only open ques-
tion was, would he waive present payment and share in the
results of the management of the trustee, or would he retain
his right to enforce immediate payment whenever and where-
ever he could find his debtor's property? The fact that he
tested the latter possibility lays no foundation for the presump-
tion that he assented to the appropriation of the entire estate
of his debtor by other creditors, being powerless to prevent
such action. The law does not presume assent as against
him because of his omission to attempt the impossible;
because of his omission to attempt to deprive those creditors
of rights lawfully exercised by them. From the day of
execution of the deeds he was ignorant, without fault on his
part, of the fact that any right in or to any property of his
debtor remained to him, which he could put in peril by his
omission to act, or defend and save by action. For the
reason that he sat still under such circumstances, he did not
necessarily, as a matter of law, assent.

Courts of equity do not impute laches by an iron rule. Cir-
cumstances are allowed to govern every case. The funda-
mental and only just reason why this plaintiff should be
postponed to a grantee under a fraudulent and avoidable
deed is that the delay of the former in enforcing his claim
against the property has induced the latter to subject him-
self to some form of peril of law, or come under some diffi-
culty in protecting his rights, or to assume some burden,
let go some advantage, or part with some right or thing of

value; in short, to be where he otherwise would not have been. Now there is no finding, no evidence, no averment even by the trustee, that he has suffered or done either of these things; none that he has been influenced in the slightest degree by any act or omission on the part of the plaintiff. Indeed, upon the facts, an assumption that he had been would be quite unwarrantable. The assenting creditors represented eight millions of dollars; they took from the possession of their debtor property of the estimated value of fourteen millions; they proceeded at their pleasure to sell and retain the proceeds; to use, and consume in the use the remainder, and retain the profits. The non-assenting creditors represented about $115,000. It would be an affront to the common sense and business sagacity of the assenting creditors to presume that they would have abandoned the practical ownership of fourteen millions of property or would have paused for an instant in their plan to appropriate it to their best advantage, even if they had possessed positive knowledge that they would be compelled to advance the amount of these non-assenting debts to protect themselves in the possession of the vast remainder; and the finding is, as might be expected, that soon after the execution of the deed, without waiting to know whether the plaintiff would accept the terms which they had imposed upon him, their agent, the trustee, took possession of the entire estate.

In 1876 the trustee expended more than a quarter of a million of dollars in reparation of injuries by a flood to the mill property in Sprague in this state, the subject of this controversy. But, as before, there is neither finding of fact nor averment, nor warrant for the supposition, that in making this provident expenditure he was controlled in the slightest degree by any consideration of the plaintiff's assent or non-assent. Regardless of him and of his position in reference to it, an irresistible compulsion was upon him as the guardian of a vast property in the interest of persons who were either to reap large profits from its use or sale if the mill should be restored, or to bear large losses if it should be left in a state of decaying idleness. He made the expenditure;

they have had several years use of the mill; they have not alleged that the expenditure has not been repaid by use.

Statutes of limitation are no part of a contract; they concern only the form and time of the remedy for a breach thereof. They are local; of force only within the state which enacts them. This court does not enforce foreign statutes of that description. Our statute provides that no action on simple contract shall be brought but within six years after maturity; but in computing such period, the time during which the party against whom there may be any such cause of action shall be without this state shall be excluded. A resident of another state who is sued upon his first entry into this state is within the scope of this exception equally with a former resident here, subsequently residing in another state and returning to residence here. Under this statute resident and non-resident creditors and debtors stand upon the same footing. Under it every creditor resident or non-resident is entitled to the full period of six years in this state in which to institute an action upon a simple contract, making such service upon the debtor as will support a personal judgment, a judgment which will conclusively determine the issue between the creditor and the debtor and bind both in every jurisdiction. The fact that, during the whole time of such debtor's being so without this state that no service of process can be made upon him which will support such personal judgment, he held real estate here open to attachment by, and of sufficient value to pay the claim of the creditor, is of no legal significance. Under the statute the presence of such real estate is neither a legal nor sufficient substitute for such residence of the debtor as will enable the creditor to obtain such personal judgment. Of course the creditor at any time, while the debtor is so without the state, can institute his action, and appropriate such property of the debtor as may here be found, to the extinguishment of the debt; but this will be only in the nature of a proceeding *in rem*, binding upon the property, but not sustaining a judgment binding upon the person of the debtor

in every jurisdiction. *Sage* v. *Hawley*, 16 Conn., 106; *Hatch* v. *Spofford*, 24 id., 432.

The title of the defendant Chafee, trustee, rests upon the validity of the mortgage deed of November, 1873, and of the deed of assignment of April, 1874, from the Sprague Manufacturing Company to him. This court in *De Wolf* v. *The A. & W. Sprague Manufacturing Company*, 49 Conn., 282, determined that both of these deeds are fraudulent and void as against non-assenting creditors. Of these is the plaintiff. Therefore from 1873 to this present there has been in this state real estate the title to which, as between Chafee, trustee, and the plaintiff, has been in the A. & W. Sprague Manufacturing Company. Yet, during this time the company has been continuously non-resident and beyond the reach of such process within this state as will support a personal judgment binding upon it in every jurisdiction. Therefore neither it nor Chafee, trustee, can invoke the aid of our statute of limitations in an effort to prevent the plaintiff from appropriating this real estate to the payment of his debt. Neither can either of them here plead in bar the statute of limitations of the state of Rhode Island, for the reason already given.

In form this is a petition for the foreclosure of a lien or statutory mortgage upon real estate as the property of the A. & W. Sprague Manufacturing Company. The lien exists by virtue of the judgment in this state in favor of the plaintiff against that company; this judgment in turn rests upon one rendered in the state of Rhode Island; and this last upon a debt due from it to the plaintiff. There was no legal necessity for the judgment in Rhode Island, and it would have availed Chafee nothing if he had been permitted to appear in that suit and plead the statute of limitations of that state; nothing if he had driven the plaintiff out of that court. The latter could still have sent his claim in its original form into this state and thereon ordered suit, attachment and appropriation of the real estate by levy of execution, if he had desired so to do.

This unnecessary change of form of claim without change

of substance neither works hurt to the plaintiff nor brings help to the defendant. It cannot be made the occasion for driving the former out of court, in reality he is appropriating the property of his debtor to the satisfaction of a judgment at law based upon a debt, the validity and justice of which both defendants admit.

The law of this state is, that as against the plaintiff both of those deeds were fraudulent and void and conveyed no title to the real estate here. Knowledge of the law of his state of residence is to be imputed to him, but not knowledge of the law of a foreign state. Upon the record, after the promulgation of the law of this state by this court he speedily instituted proceedings for the appropriation of the real estate in this state, not effectually conveyed to Chafee, trustee. There was no laches on his part after knowledge of his rights, and no laches in obtaining such knowledge. He had the right to presume that the law of this is as the law of his own state. He was under no obligation to assume the burden of a suit for the purpose of learning whether it is so or not.

The plaintiff was not compelled to ask the aid of the equitable powers of the court. Upon the record he had a judgment at law, upon which he was entitled to an execution, in satisfaction of which the real estate attached in the suit might have been set out to him. He had also means of satisfaction by lien and foreclosure on the equitable side of the court, assuming the judgment to be of such a character as to come within the statute as to judgment liens, as to which no question is made in the case. With this right at the time to apply the property to his debt by proceedings at law, his delay in instituting those proceedings is not laches. Laches is not to be imputed to a suitor in a court of law who has not brought himself within the statute of limitations. If there had been no laches up to that point, and he had then the right to resort to a judgment lien and a foreclosure, he is not affected by any imputed laches in a court of equity.

The Superior Court is advised to render judgment for the plaintiff.

In this opinion PARK, C. J., and BEARDSLEY, J., concurred; CARPENTER and LOOMIS, Js., dissented.