THE STATE OF CONNECTICUT EX REL. CHARLES T. MC-CLURE, EXECUTOR, ET AL. *vs.* D. WARD NORTHROP ET ALS.

First Judicial District, Hartford, October Term, 1918.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and GAGER, Js.

With respect to the statute of limitations, a cause of action will not be deemed to have accrued until there is a person in being capable of bringing suit thereon; and therefore the statute does not begin to run in favor of a testamentary trustee who, during the trust period, has misappropriated the trust funds, until his removal and the appointment of his successor. Nor does the statute run against those entitled to the principal of the fund upon the termination of the trust, until that time arrives and the breach of the trust has been established.

Under General Statutes, § 6175, the fraudulent concealment of the existence of a cause of action by one liable to suit, suspends the running of the statute until the person entitled to sue discovers his right to do so.

Until a testamentary trustee has rendered a final account which is

The State ex rel. McClure *v.* Northrop.

accepted by the Court of Probate, the six-year limitation in favor of the surety upon the probate bond (§ 6156) does not apply.

No obligation to protect the sureties upon a probate bond against the acts or omissions of their principal, rests upon those who may be entitled to the *corpus* of the fund upon the termination of the trust period, nor can the latter be responsible for the acts or conduct of the life tenants or beneficiaries of the trust during its continuance; and therefore until the termination of the trust the remaindermen cannot be chargeable with laches.

The defense of laches is maintainable only when there has been such a delay in the assertion of a claim as naturally prejudices the other party.

A delay in bringing suit for two or three years upon a probate bond cannot be said to have "naturally prejudiced" the defendants, in the absence of any finding to that effect.

An agreement to release the principal debtor which is without consideration and is also conditional, is of no validity and therefore does not operate to discharge the sureties.

An agreement to accept a part of a debt in satisfaction of the whole, so long as it remains executory, is of no effect.

The breach of a probate bond subjects the sureties to an ordinary money demand for damages.

A claim against the estate of a decedent which accrued after his decease (Rev. 1902, § 326)—or, as the statute now reads (Rev. 1918, §4983), "after the time limited for the presentation of claims "— must be exhibited within four months after a right of action thereon accrues, otherwise it is barred.

The adjudication of a legal claim against a decedent's estate is essential as a basis for a decree in equity requiring the distributees to refund the assets of the estate so far as may be necessary to satisfy the claim thus established; and therefore if the claim against the estate is barred, because not seasonably presented, there is no basis or foundation for a resort to the supplementary equitable remedy.

In a proper case the two remedies may, however, be applied as successive steps in one and the same action.

If the legal claim against the estate is established, there is then no bar but laches to the equitable remedy against the distributees.

Argued October 1st, 1918, re-argued June 3d, decided July 16th, 1919.

ACTION by those entitled to the principal of a trust fund to recover damages for a breach of the trustee's probate bond, brought to and tried by the Superior Court in Middlesex County, *Case, J.;* facts found and judgment rendered for the respective plaintiffs against

the defendant Northrop, and in favor of the other defendants, from which the plaintiffs appealed. *Error.*

One Northrop was, on July 30th, 1884, appointed, after several successive trusteeships, trustee of a trust created by the will of Charles Brewer in favor of sundry beneficiaries as life tenants, with provision that upon the death of the last life tenant the trustee should pay over, convey and deliver the trust estate remaining, to all of the children of the sons of Charles Brewer and their issue then surviving. Northrop gave a bond, the sureties upon which were Clarissa L. Northrop, Ettie M. Northrop, and Arthur B. Calef, deceased, under whose will defendant J. Francis Calef is the sole surviving executor; said J. Francis Calef was also a distributee of the estate of Arthur B. Calef, his brother.

On July 24th, 1911, Northrop was removed by the Court of Probate for failure to file his account, and the Middletown Trust Company was appointed in his stead.

Those entitled to the principal of the fund upon the termination of the trust, on February 26th, 1913, were: the children of Henry who was a son of Charles; the children of Frederic, a son of Charles; and William Brewer, a son, and Jennie W. Blinn, a daughter, of Samuel, a son of Charles. Charles T. McClure, the executor of William Brewer, who died March 16th, 1916, and Jennie W. Blinn, are the plaintiffs in this case.

The defendant Northrop failed and neglected to turn over the funds of this trust estate to his successor, or to pay any part thereof to either of the plaintiffs. The entire trust fund of $8,000 had been misappropriated by Northrop by the close of the year 1897.

Arthur B. Calef, one of the sureties upon Northrop's bond, died August 17th, 1900, leaving a will and a substantial estate which was duly distributed. The Court

of Probate allowed six months from August 27th, 1900, within which claims should be presented. No claim for breach of this bond was presented against the estate of Arthur B. Calef within this period, or subsequently. Before this action there had been no judicial ascertainment that Northrop had misappropriated the funds, or that they had been wholly or partially lost, or to what extent, if any, Northrop was able to make good his default.

Jennie W. Blinn, one of the plaintiffs, and William Brewer, on or prior to July 30th, 1911, knew that these funds had been misappropriated by Northrop and were wholly lost. On March 4th, 1914, Jennie W. Blinn and William Brewer entered into an agreement with Northrop to release him from all obligation to them by reason of his default as trustee, provided he would pay to them $2,000 before May 1st, 1914, and accrued interest on their portion of the trust fund to that date.

Jennie W. Blinn, with full knowledge of the default of Northrop and after his removal and during the years 1914 and 1915, continued to accept payments from him equal in amount to what her portion of the income would have been had this fund remained intact; and in consideration of these payments and promises she refrained from taking action against Northrop or any of the sureties, and refrained from giving the sureties or their representatives any notice of the breach of trust of the trustee.

Neither the surety Ettie M. Northrop, nor J. Francis Calef, executor and distributee of another surety, Arthur B. Calef, had any notice of the breach of trust of Northrop until the commencement of this action.

On December 31st, 1908, Northrop, trustee, filed an account, and this was the only account filed by him as trustee. He concealed from the beneficiaries of this fund up to the time of his removal as trustee in 1911, the fact that he had misappropriated the fund.

*George W. Crawford,* with whom was *Charles T. Mc-Clure,* for the appellants (plaintiffs).

*Gustaf B. Carlson,* for the appellees (defendants other than D. Ward Northrop).

WHEELER, J.  This action seeks to hold the principal and one surety, Ettie M. Northrop, upon a probate bond, and J. Francis Calef, the executor of the will of another surety, Arthur B. Calef, who was also a distributee of such surety.  All of these parties are properly in court and all the steps requisite to be taken to hold the principal, the living surety, and the representative and the distributee of the estate of the deceased surety, have been taken.  An adjudication of the entire matter may be had in a single action, each step can be kept distinct, and when this is done the distributee of the deceased surety may be compelled by-an appropriate decree to recontribute to the estate to the extent of the share received by him, and this sum is then available to meet the judgment against the estate of the deceased surety.  *Davis* v. *Vansands,* 45 Conn. 600, 604; *Mathewson* v. *Wakelee,* 83 Conn. 75, 79, 80, 75 Atl. 93.  From this it follows that the court was in error in sustaining the demurrer to the complaint, of the defendant J. Francis Calef, in his personal capacity as distributee of Arthur B. Calef.

The Superior Court rendered judgment against the principal on the bond, and in favor of one surety and the representative and the distributee of a deceased surety upon this bond.

The appeal of the plaintiffs, aside from the correction of the finding, attacks the judgment in favor of the sureties.  It is clear that the sureties upon this bond are equally liable with the principal, unless the sureties can avail themselves of one of the statutes of limita-

tion, or the statute of non claim, or a general claim of laches.

Counsel for the sureties argue that the cause of action accrued against the trustee and the sureties on this bond in 1897, when the trustee had lost or misappropriated all of the funds of the estate in his hands; that the breach occurred when the trust fund was converted, and hence an action could have been brought at that time, and that this set in operation the general statute of limitation, which provided that an action should not be brought on contracts under seal but within seventeen years. General Statutes, § 6151.

We think the argument fails to take into account the distinction between the creation of a liability upon a bond, and the accrual of a cause of action thereon. It is undoubted that the statute of limitation begins to run as soon as the right of action has accrued. *Eising* v. *Andrews*, 66 Conn. 58, 65, 33 Atl. 585. But the right of action will not accrue until there is a person or persons capable of suing and being sued. 25 Cyc. 1067. The trustee, Northrop, was the only legal custodian of this fund. The beneficiaries of the life estate and of the remainder estate could institute proceedings to secure his removal, but, until a trustee was named in his stead, there was no one against whom the statute could run. Further, until Northrop failed, on demand, to pay over the trust fund to his successor, it could not be known that he would not meet this obligation. The *cestui que trust* is entitled to have the entire trust fund paid over upon the settlement of the trust, and the statute of limitation cannot run against him and in favor of the principal upon the bond, the trustee of the trust fund, until his trusteeship is terminated and his breach of trust then established. *McKim* v. *Glover*, 161 Mass. 418, 421, 37 N. E. 443; *Prindle* v. *Holcomb*, 45 Conn. 111, 121; *State* v. *Howarth*, 48 Conn. 207, 212.

There is another conclusive reason why the statute of limitation has not run the requisite seventeen years. The trustee fraudulently concealed his breach until about the time of his removal, the court finding that Northrop had "concealed from the claimants of the fund up to the time of his removal in 1911, the fact that he had misappropriated the fund." The fraudulent concealment by the trustee of the cause of action arrested the running of the statute until the time "when the person entitled to sue thereon shall first discover its existence." General Statutes, § 6175. The effect of this statute is that no cause of action came into existence by reason of Northrop's misappropriation until it was discovered in 1911, and the Middletown Trust Company was appointed trustee in his stead. *Eising* v. *Andrews*, 66 Conn. 58, 64, 33 Atl. 585.

The sureties do not pursue in their brief the claim that this action is barred by the statute limiting actions against sureties on probate bonds to those brought within six years from the final settlement and acceptance of the account of the principal. General Statutes, § 6156. The trustee, Northrop, has never rendered a final account, and hence this statute never began to run.

The defendants assert in their brief, but do not there argue, their defense of laches. Our reasons for not thinking this defense available to these defendants are these: No obligation rested upon the distributees of this trust fund to protect the sureties on this bond against the act of the principal, prior to the death of the last life tenant, Susan Brewer, on February 26th, 1913. Until then the distributees could not be known; and in the absence of fraud on their part prejudicial to the sureties, they cannot be held in any degree responsible for the acts or omissions of this testamentary trustee. *State* v. *Howarth*, 48 Conn. 207, 213. Nor

can the distributees be held responsible for the acts or omissions of the life tenants. Remaindermen and life tenants are not in privity. There is thus no possible basis for a claim of laches on the part of these distributees, who are the plaintiffs herein, until after the decease of the life tenant, for their right to enforce a final distribution began then. Before that time a charge of laches on their part could not be sustained.

The finding does not disclose that these defendants or any of them have been prejudiced by the delay of the plaintiffs in asserting their claim between February 26th, 1913, the date of decease of the last life tenant, and December 18th, 1916, the date of the writ in this action. "There is no merit in the defense of laches. That exists only where there has been such a delay in the assertion of a claim as naturally to prejudice him against whom the claim is set up." *Hartford* v. *Mechanics Savings Bank*, 79 Conn. 38, 41, 63 Atl. 658; *Waterman* v. *Sprague Mfg. Co.*, 55 Conn. 554, 574, 12 Atl. 240. We cannot hold as matter of law that the delay for this period has "naturally prejudiced" these defendants, that is, that this delay was for such a period and under such circumstances as to lead to the natural conclusion that it must have prejudiced these defendants. Nothing short of a specific finding would warrant such a conclusion.

Our consideration of the case has led us to examine one question not raised by counsel, viz: whether the agreement to release Northrop discharged the sureties on the bond. The finding recites that Mrs. Blinn and William Brewer entered into an agreement with Northrop, the principal upon the bond, to release him from all obligation to them by reason of his default as trustee, provided he would pay to them $2,000 before May 1st, 1914, and accrued interest on their portion of the trust fund to that date. Two additional facts are of signifi-

cance. 1. The amount of the trust fund which was the share of Mrs. Blinn and Mr. Brewer at the time of this agreement, exceeded the sum of $2,000 and the accrued interest due on their share. 2. There was no consideration for this agreement.

An unqualified release of a principal debtor will discharge the surety. *Rockville National Bank* v. *Holt,* 58 Conn. 526, 531, 20 Atl. 669. To effect the discharge the release must be unconditional and upon good consideration. In *Boardman* v. *Larrabee,* 51 Conn. 39, 43, the purchaser of land which was subject to a mortgage assumed the mortgage note. After it became due the creditor gave the purchaser time for payment. It was held that the purchaser became, in his relation to the mortgage debtor the principal debtor, and the original debtor in his relation to him a surety, but that this relation existed only between themselves and did not affect the mortgage creditor. And where, after the mortgage note has become due, time is given the purchaser for payment, it does not discharge the original debtor on the ground that he has become a surety. In the course of its discussion the court, by PARDEE, J., said: "Moreover, if we should concede to Larrabee the rights of a surety, he would be met by the well-settled rule that the surety is only released when there is a positive contract by the holder to give time to the principal—a contract upon good consideration susceptible of enforcement." See also *Phoenix Mutual Life Ins. Co.* v. *Holloway,* 51 Conn. 310.

These decisions are authoritative that the agreement to release Northrop from his default did not discharge the surety, since there was no consideration for the agreement, and since the release was not unqualified but was conditional upon the payment of the sum agreed upon. An agreement without consideration is a mere indulgence and unenforceable. It does not

prevent the creditor from pressing his claim, hence it cannot operate to discharge the surety. In this case the amount to be paid was less than the amount due, and the interest promised to be paid was the interest accrued. Northrop did not agree to pay anything which he was not already bound to pay.

In *Wilson* v. *Powers*, 130 Mass. 127, the court say: "The indorser or the surety upon a note is discharged by an agreement made, without his consent, between the holder and the maker to give time to the maker. But, to have this effect, it must be a valid agreement founded upon a good consideration, such as can be enforced either at law or in equity. . . . Walsh did not promise to do anything which he was not already bound by his note to do. . . . There was no advantage to Wilson nor disadvantage to Walsh . . . which can constitute a consideration. . . . It was, therefore, not binding upon him [Wilson]. Notwithstanding the agreement, he could at any time have sued Walsh upon the note, and the sureties could at any time have paid the note and have prosecuted their remedy against Walsh." See also *Olmstead* v. *Latimer*, 158 N. Y. 313, 53 N. E. 5; *Miller* v. *Hatch*, 72 Me. 481, 484; *M'Lemore* v. *Powell*, 25 U. S. (12 Wheat.) 554; *Clark* v. *Gerstley*, 204 U. S. 504, 27 Sup. Ct. 337.

One other reason takes this case out of the general rule. The agreement to release Northrop was conditioned upon his payment of a part of the sums owed. So long as this condition was unperformed the agreement was executory and the obligation upon the original debt existed. The agreement of discharge must be absolute and unqualified. It must contain words of present discharge. Judge Wells states the principle as well as we have seen it stated, in his opinion in *Blake* v. *Blake*, 110 Mass. 202, 203: "The agreement to accept a part in satisfaction of the whole, so long as it remains

executory, will not operate either as payment, satisfaction or discharge. . . . The instrument, being under seal, may operate as a discharge if its terms so provide; but not otherwise. It contains no words of present discharge. The only provision for a future discharge is, that upon payment in full of the lesser sum, stipulated to be paid in lieu of the whole, 'the said note shall then be canceled and surrendered.' . . . Until that condition is complied with, the original debt remains unaffected by the executory agreement for a discharge." See also *United States* v. *Nicholl,* 25 U. S. (12 Wheat.) 505; *Stroud* v. *Thomas,* 139 Cal. 274, 72 Pac. 1008; *Regan* v. *Williams,* 185 Mo. 620, 84 S. W. 959; *Thorn* v. *Pinkham,* 84 Me. 161, 24 Atl. 718. The agreement of release did not discharge the sureties.

The defendant J. Francis Calef, as executor of Arthur B. Calef, one of the sureties, further defends upon the ground that this action is barred against him for the reason that the claim on which it is based was not presented to the estate of Arthur B. Calef within the time allowed by the Court of Probate for the presentation of claims. The time thus allowed was six months from the 27th day of August, 1900. The order of the Court of Probate in terms applied to existing claims. It did not contemplate contingent or after-accruing claims which had no present existence. A liability upon a bond which may or may not thereafter accrue is not affected by an order such as this, when it accrues after the period limited in the order. The liability against Northrop accrued when demand was made upon him by his successor in the trust in 1911 for the funds which had been misappropriated by him in 1897. His failure to turn these over fixed his liability and its extent. There was nothing in the probate order which required these plaintiffs to then or thereafter present their claim against the estate of Arthur B. Calef.

But General Statutes (1902) § 326, provides that "when a right of action shall accrue after the death of the deceased, it shall be exhibited within four months after such right of action shall accrue"; and the question recurs whether the claim of the plaintiffs, as against the estate of Arthur B. Calef or J. Francis Calef, executor, is not barred by their failure to present it within four months from the time it accrued. This statute, except as to the period of limitation, has remained substantially as first enacted in 1821. Prior to that time there was no specific limitation as to the presentation of claims that accrued subsequent to the death of the deceased, but a claim was barred by unreasonable delay. *Griswold* v. *Bigelow*, 6 Conn. 258, 265. This statute has been held to mean that if a right of action accrued after the death of a decedent it is barred unless presented within four months after its accrual. *Pease* v. *Phelps*, 10 Conn. 62, 67; *Bacon* v. *Thorp*, 27 Conn. 251, 260. Unless the character of the claim excludes it from the bar of the statute, it cannot now be an enforceable claim against the estate of Arthur B. Calef or J. Francis Calef, executor. The claim against the sureties is an ordinary money claim for breach of a bond. If the estate were still in process of settlement, the executor could unquestionably have pleaded the bar of the statute. The action against the estate would have been a legal one for a money demand, just as if the surety had been alive. Neither action would have called for equitable relief. Had the claim been duly presented, an action would have lain against the estate and a judgment for damages could have been obtained. The estate having been distributed, equity provides a means of enforcing the judgment by compelling the distributees to refund to the estate such portion thereof as they had received and which would be required to satisfy the judgment. The action against the distrib-

utees is an equitable remedy. But it must be founded upon the adjudication of a legal claim against the estate; and the statute operates against such a claim. If the claimant establishes his claim, then there is no bar to the equitable remedy against the distributees, except that of laches. We pursue in one action the legal remedy against the estate and the equitable remedy against the distributees, but they remain in reality two independent actions. "Two successive steps," as they were called in *Mathewson* v. *Wakelee*, 83 Conn. 75, 79, 75 Atl. 93, the first to judicially establish that the plaintiff has a valid claim enforceable against the estate; the second, an equitable action to reclaim the assets of the estate so that they may satisfy the claim. The first step is a legal action and within the bar of the statute; the second is an equitable action and without the bar of the statute.

The sustaining of the demurrer in favor of J. Francis Calef requires a rescript reversing the judgment in his favor, although the conclusion reached will ultimately require a judgment in his favor.

There is error, the judgment in favor of the defendants Ettie M. Northrop and J. Francis Calef in his personal capacity is reversed, and the judgment in favor of J. Francis Calef, executor, is sustained, and the cause is remanded with direction to the Superior Court to assess the damages against Ettie M. Northrop and render judgment in accordance with the foregoing opinion, and that the cause against J. Francis Calef in his personal capacity be proceeded with according to law.

In this opinion the other judges concurred.