GEORGE J. BASSETT, BANK COMMISSIONER, *vs.* THE CITY BANK & TRUST COMPANY.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued February 7th—decided May 9th, 1933.

Harry L. Nair, with whom was Bernard C. Kamerman, and, on the brief, Solomon Elsner, for the appellant.

Lucius F. Robinson, with whom were Barclay Robinson and William W. Fisher, for the appellee (the receiver).

HINMAN, J.   June 18th, 1925, the applicant, Florence Gates Judd, leased certain space in a building in Hartford to The Mutual Bank & Trust Company for a term of ten years from July 15th, 1925, and other space therein, by a second lease dated October 23d, 1926, to July 15th, 1935.   She procured a judgment for rent under the first mentioned lease, which was affirmed on appeal.   Judd v. Mutual Bank & Trust Co., 116 Conn. 167, 159 Atl. 487.   Rents under the second lease are unpaid since January 1st, 1932.   She also claims subsequent rentals to the end of the term of these leases.   The present motion, alleging facts which, so far as regarded essential, are included in the statement of facts found, prayed that the transfer of assets of The Mutual Bank & Trust Company, hereinafter referred to as the Mutual, to The City Bank & Trust Company, which will be referred to as the City, be declared illegal and void; that the receiver of City be required to segregate all assets acquired by City from Mutual which are now in his possession and liquidate and distribute the same among the creditors of Mutual, and to account for all the assets acquired

by City from Mutual and disbursements on account of liabilities of the latter; also that an order be passed requiring the receiver to pay the applicant the amount of her claims for rentals out of assets of Mutual in his hands. The trial court concluded that the transactions resulting in the transfer of all of the assets of Mutual to City constituted a sale, not an assignment for the benefit of creditors, and was not illegal. It was further held that the issues presented could not be legally adjudicated by motion filed in the receivership proceeding but can only be determined in a separate action brought for that purpose, but as the receiver does not rely upon procedural defects and the parties have fully argued the appeal from the above-mentioned conclusions, in the interest of desirable expedition we discuss the merits so far as appears to be necessary to present purposes.

From the finding and the exhibits made part thereof it appears that on November 8th, 1930, Mutual was financially embarrassed, and action by the bank commissioner closing the bank was imminent unless some satisfactory arrangement was made for the taking over of its assets and assumption of its liabilities by some other bank. For several days the situation had been the subject of conferences between the commissioner and officers of Mutual and of other banks in the city and it was generally recognized by them that the effect of a closing of Mutual, by order of the commissioner, upon the financial institutions of the city would be serious. As a result of these conferences City agreed to take over the assets of Mutual and assume its liabilities upon specified terms, and this action being approved and authorized by the directors of Mutual and City, an agreement to that end was executed on November 8th and was subsequently ratified by vote of the stockholders of Mutual. Prior to No-

vember 10th, pursuant thereto, Mutual transferred and delivered to City all of its assets and thereafter, as additions to the assets so transferred, the directors of Mutual personally paid City $150,000 and other banks contributed $150,000 in cash, which, it was believed, would create a body of assets of sufficient value to protect City from any loss which might accrue to it through the transaction.

The agreement set forth that Mutual, in consideration of the undertaking of City, "sells, assigns, transfers and sets over" to City all mortgages, bonds, stocks, notes, bills of exchange, choses in action and other securities or evidences of indebtedness owned by it, and all of its cash and cash items, together with all other assets of its savings department, subject to claims of depositors in the savings department, and of its commercial department, or connected with its banking business, also all of the assets of all other departments of the bank, "To Have and to Hold the same to it . . . its successors and assigns forever." City, in consideration of the foregoing, assumes and agrees to pay the following liabilities of Mutual: all deposits in its savings, commercial and other departments; all its outstanding notes, certificates of deposit, checks, bank balances and other banking liabilities, but not including any liability to its shareholders on account of outstanding shares of capital stock, except as thereinafter provided; also all taxes due or to become due to the Federal or State government; all rentals accrued or accruing on lease of its banking quarters (being the rentals here involved) and all salaries and wages due to officers and employees accrued or accruing in November, 1930.

A subsequent provision is to the effect that as, in consideration of the obligations undertaken by City under the agreement, the directors of Mutual have

paid City $150,000, it is agreed that if, after the affairs of Mutual hereby taken over have been liquidated and City has been indemnified for expenses incurred, any balance remains on hand it shall be paid first to reimburse the directors of Mutual for the $150,000 contributed by them, with interest, and if, after the directors have been so reimbursed, there be any balance remaining it shall be paid to Mutual for the benefit of its stockholders. Mutual further agreed that it would not for a period of two years from date engage in the banking or trust business in Hartford without consent of City.

In carrying out the provisions of this agreement, the procedure adopted by City was as follows: the banking liabilities of Mutual, with certain minor adjustments, were forthwith entered upon the books of City as its liabilities, all commercial deposits of Mutual being credited to the respective depositors as commercial deposits of City and all savings department deposits of Mutual being credited to the respective depositors as savings department deposits of City, and the checks or drafts of all commercial depositors upon the deposits so credited were honored by City whether drawn upon Mutual or upon City, the use by these depositors of checks drawn on Mutual being gradually discontinued. Respecting the deposits credited to Mutual's savings department depositors by City in its savings department, pass books of City evidencing the deposit balances were prepared and, upon presentation, the Mutual pass books were taken up and City pass books substituted. All cashiers' and treasurers' checks and drafts, certified checks and certificates of deposit of Mutual outstanding at the close of business November 8th, 1930, were honored by City on presentation. The banking liabilities of Mutual so entered upon its books by City, in so far as the same have not been paid or

satisfied, have been continued as liabilities upon the books of City and have been included by the receiver of City in his report of claims.

The assets transferred by Mutual to City were dealt with as follows: the stocks, bonds and certain of the mortgages which had been in Mutual's savings department were allocated to City's savings department; other Mutual savings department assets, which failed to meet City's test for savings department investments, together with the other assets were held in City's commercial department without other allocation. The deficiency in City's savings department resulting from the assumption of Mutual's savings department deposits in excess of the value of Mutual assets allocated to City's savings department, was compensated by transfer by City to its savings department of other assets which met the statutory requirements for investment of savings department deposits. All Mutual assets other than cash, cash items and the securities specifically entered upon City's books were carried in City's statement under an entry "Liquidation Account, Mutual Bank & Trust Company" at a figure which represents the amount required to be realized from liquidation of these assets which with the cash, cash items and securities specifically entered in City's books would equal the Mutual banking liabilities assumed by City as aforesaid plus such expense items as from time to time were credited to City. The assets so carried, at their values on the books of Mutual at its closing, were always in excess of that item, and on January 2d, 1932, upon that basis of valuation, were $750,314.60. These unliquidated assets were included in the inventory filed by the receiver of City and were appraised, as of January 2d, 1932, at $216,278.16, or $146,298.84 less than the amount at which they were carried on City's state-

ment. For the purpose of the accounting for any balance out of which reimbursement of the directors of Mutual and, after that, payment for benefit of Mutual shareholders as provided by the agreement might be made, City kept books in which it was credited with all the banking liabilities assumed, taxes, salaries and wages paid, and certain expenses, and charged with all cash and cash items transferred, the payments made by Mutual directors and contributed by the banks, corporate stocks and similar items, bonds and mortgages transferred; also all moneys collected from time to time on the principal of any notes and evidences of indebtedness, other than the foregoing, and the amount of indebtedness upon such notes and bills as City was willing to treat as good and for which it accepted renewal notes.

At the time of the agreement, November 8th, 1930, and the transactions under it, City was in a strong liquid financial position, and in the view of the bank commissioner and the officers of the other banks of the city was logically situated to take over the assets and liabilities of Mutual. However, on January 7th, 1932, a temporary receiver of City was appointed, was afterward made permanent, and is now acting as such.

The major contention of the appellant is that the transaction was not a sale, as the trial court held, but a transfer for the purpose of liquidation for the benefit of Mutual creditors, it being claimed that the surrounding circumstances, certain language in the authorizing votes and in the contract itself, and the actual practice in carrying out the agreement so indicate. Much reliance is placed upon the fact that in some of the votes the transfer of assets from Mutual to City is mentioned as "for liquidation," and it is insisted that this be construed as establishing an intention to constitute City a trustee to realize upon the assets and

apportion them toward the discharge of ascertained liabilities of Mutual, as in the winding up of a corporation. This meaning is included within the definition of "liquidation." *Fuller* v. *Perkins*, 30 R. I. 3, 73 Atl. 672. Equally, however, and in common parlance, the term is employed as signifying merely payment, satisfaction or collection. *Richmond* v. *Irons*, 121 U. S. 27, 7 Sup. Ct. 788, 804. In her prayers for relief the applicant asks that the assets acquired by City remaining in the hands of its receiver be "liquidated" and distributed among Mutual creditors. Other provisions of the votes in question, the agreement itself, and the practical construction of it satisfy us that the term here has not the significance which the appellant claims. The votes and the agreement, while manifestly hastily drafted under pressure of the exigencies of the situation necessitating immediate action, clearly show that the gist of the transaction was a taking over of the assets of Mutual and the assumption of its liabilities by City without conditions affecting the absoluteness of such transfer and assumption.

The language of the agreement which we have already quoted is consistent only with and signifies an absolute transfer of title of all of Mutual assets and a like assumption of all liabilities except to stockholders as such. The only provision of it in which liquidation is mentioned is that for the undertaking, which may be regarded as a part consideration for the transfer, for indemnification of the Mutual directors for their cash contribution, if any balance ultimately remained after satisfaction of all of the assumed liabilities and expenses. Applying the test adopted in *Hightower* v. *American National Bank*, 263 U. S. 351, 359, 44 Sup. Ct. 123, which the appellant invokes, that the contract "must be examined as a

whole to determine the transaction of which it is a memorial," such examination here "makes for the view that the transfer of assets and the assumption of liabilities were without qualification or reservation." The further provision in the contract restricting Mutual from engaging in banking or trust business in Hartford for two years imports an intention to continue the corporate existence, which is inconsistent with the "winding up" of the corporation which is the ultimate object of liquidation in the sense which the appellant claims.

The procedure adopted by City with the acquiescence of Mutual in carrying out the provisions of the agreement is consistent only with a sale and absolute transfer and assumption, and irreconcilable with an assignment or other transfer for benefit of creditors merely. In the latter case, the Mutual assets and liabilities would have been segregated and kept separate from those of City. Here, on the contrary, the facts above stated show that all of the banking liabilities of Mutual were at once made similar liabilities of City and thereafter were treated as such. All of the assets which satisfied City's test were allocated to the appropriate department of City and so entered on its books. It was only the assets received from Mutual other than those so allocated which were carried in a so-called liquidation account which, it appears, was merely an accounting method adopted as to assets which did not meet City's test of admissibility as assets. of either its savings department or commercial department, and which were carried in that account until realized upon or converted into obligations which City was willing to treat as good and enter and carry on its books as such. In the meantime, the assets carried in this account were as fully the property of City as the others which it received from Mutual.

*Guaranty Trust & Savings Bank* v. *United States Trust Co.*, 89 Fla. 324, 103 So. 620, on which the appellant chiefly relies as authority supporting its contention, is distinguishable because of essential differences between the agreement involved and the one now under consideration. *Ex parte Savings Bank of Rock Hill*, 73 S. C. 393, 53 S. E. 614, involved a doctrine—that a corporation holds its property in trust for its creditors—which does not prevail in this State. *Davis* v. *Hemming*, 101 Conn. 713, 723, 724, 127 Atl. 514; *Catlin* v. *Eagle Bank*, 6 Conn. 233, 244.

The facts in *First National Bank v. Harris* (C. C. A.) 27 Fed. (2d) 117, and *Sturdivant Bank* v. *Houck*, 47 S. W. (2d) 135, were more nearly analogous although in some respects somewhat less conclusive than the present situation. In each an embarrassed bank transferred all of its assets to another bank which assumed all of its liabilities under an agreement which also provided for return of any surplus of undisposed-of property at the end of a specified period. In the first-mentioned case (p. 124) it was said that the net result of the arrangement was that the City National Bank assumed certain liabilities and acquired certain property from the Southwest National with which to pay them and to secure itself from any deficiency in this property to meet such liabilities, it had recourse against a fund contributed by the clearing house, certain directors and certain stockholders of the Southwest National and it acquired complete title to all of the assets. "Our conception is that, under this contract, [City National] was in no sense an agent or trustee for the Southwest National . . . It was an out and out sale of assets in consideration of an assumption of liability with an account over for any surplus realized." In the second case it was said (p. 137): "Under the contract, the agreement of the

Sturdivant Bank to pay the liabilities of the Cape Exchange Bank is absolute, and it is bound to pay such liabilities regardless of whether or not the amount realized on the assets be sufficient to pay the same . . . it must pay such liabilities on demand, or when due, and is not permitted to wait until such assets may be converted into cash and become available. The assumption of such an obligation as this by the Sturdivant Bank is utterly out of accord with the position of a mere trustee, or liquidating agent."

It is claimed by the appellant that the sale by Mutual of all its assets to City was impliedly forbidden by § 3384 of the General Statutes, which authorizes any corporation, except certain specified classes including banks, to sell, lease or exchange all its property and assets upon vote of two thirds of its outstanding stock. Previous to the enactment of this and the succeeding section, a sale of all the property and assets of a corporation not insolvent or in failing circumstances was ultra vires and could be prevented by any nonassenting stockholder. *Byrne* v. *Schuyler Electric Mfg. Co.,* 65 Conn. 336, 346, 31 Atl. 833; 3 Cook, Corporations (8th Ed) § 670. The purpose of these sections clearly was to change this rule so as to permit such a sale upon a vote of two thirds of the outstanding stock. The common-law rule does not apply to a sale, as here, of all its assets by a corporation which is insolvent or in failing circumstances, made for the purpose of closing up its affairs. *Byrne* v. *Schuyler Mfg. Co., supra,* p. 348; 3 Cook, Corporations (8th Ed.) § 670, p. 2602. The situation was outside the scope and purpose of the statute, §§ 3384 and 3385, and the sale cannot be deemed to have been impliedly forbidden by it. We find no error in the conclusion of the trial court that the transaction between Mutual and City constituted a sale.

The appellant further contends that in the situation of the Mutual on November 8th, 1930, the only course open was a receivership, either at the instance of the bank commissioner through procedure under § 3871 of the General Statutes, or on petition of holders of a majority of the shares of the capital stock under § 3920, that therefore the transaction effected was inadmissible, and asks that assets transferred which remain in the hands of the receiver of City be segregated, liquidated and distributed among Mutual creditors. It appears to us that the appellant is foreclosed from this resort to the equitable powers of the court by her own course of conduct. From the circumstances revealed by the finding, it seems clear that she was fully cognizant of the transaction which she now seeks to question, but, in common with all the depositors and other creditors, acquiesced in and tacitly approved it and the subsequent operations of City pursuant to it. Manifestly the assumption by City of Mutual's obligations was regarded and accepted as a desirable alternative for a receivership for Mutual and its undoubted consequences, especially as concerns common creditors. The appellant accepted from City rents under one of her leases, in accordance with the terms of the agreement, and diligently prosecuted her claim to like payments under the other, incidentally combating the assertion that the transaction between Mutual and City was an assignment for benefit of creditors. It was only after City itself had come into a receivership, and more than eighteen months after the transfer now attacked, that she first asserted dissent and sought to avoid the transaction. "So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no step to enforce them until the condition

of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable and operates as an estoppel against the assertion of the right." *Chase* v. *Chase*, 20 R. I. 202, 204, 37 Atl. 804. Remedy will not be afforded where it would be practically unjust to give it "either because the party has, by his conduct, done that which might fairly be regarded as equivalent to a waiver of it, or where by his conduct and neglect he has . . . put the other party in a situation in which it would not be reasonable to place him if the remedy were afterward to be asserted." *Lindsay Petroleum Co.* v. *Hurd*, L. R. 5 P. C. 221, 239; Vol. 4, Pomeroy's Equity Jurisprudence, p. 3418 *et seq.*, and cases cited; Vol. 5, p. 5125; *State ex rel. McClure* v. *Northrop*, 93 Conn. 558, 565, 106 Atl. 504; *Hartford* v. *Mechanics Savings Bank*, 79 Conn. 38, 41, 63 Atl. 658; *Waterman* v. *Sprague Mfg. Co.*, 55 Conn. 554, 574, 12 Atl. 240; *Page* v. *Cave*, 94 Vt. 306, 111 Atl. 398; *Chamberlain* v. *Lyndeborough*, 64 N. H. 563, 14 Atl. 865. Equity "will not suffer a party to lie by, until the event of the experiment shall enable him to make his selection, with certainty of profit one way, and without loss any way. This mode of procedure is unfair; contrary to natural justice; and in exclusion of mutuality." *Banks* v. *Judah*, 8 Conn. 145, 161, quoting *Hollingsworth* v. *Fry*, 4 Dall. (U. S.) 345, 347; 21 C. J. 225.

The facts already stated as to the conduct of City and its receiver in reliance upon its title to the assets transferred to it by Mutual, and the situation resulting from that course of action, demonstrate the great prejudice which would result to it, its depositors including those adopted from Mutual, and its creditors, if it were now deprived of the assets sought to be segregated and diverted to the benefit of common

creditors of Mutual. Therefore we have no occasion to determine the merits of the appellant's present contention as to the regularity of the procedure adopted and its effect upon the legality of the transaction itself.

On January 22d, 1931, on threat of the appellant's attorney to attach property as of Mutual, in her action on the lease (*Judd* v. *Mutual Bank & Trust Co., supra*), the president of City wrote a letter to the attorney, undertaking to pay any judgment recovered in that action, "out of assets" of Mutual in City's hands. Appellant claims that thereby an equitable lien was created entitling her to payment of her judgment out of such assets. Such a lien is a right over the thing with which the contract deals, by means of which the obligee is "enabled to follow the identical thing" to which the lien attaches and enforce the obligation by a remedy which operates directly upon that thing. Therefore, in order that it may arise, the agreement must deal with some specific property, such as a tract of land or particular chattels or securities, and identify it or so describe it that it can be identified. 3 Pomeroy's Equity Jurisprudence (4th Ed.) §§ 1234, 1235, pp. 2961, 2964. The letter in question is insufficient to supply this essential ingredient of an equitable lien. Since payment might be made out of any of the assets of Mutual, "the *res* to which an equitable lien might attach is wanting even were the other requisites of such a lien found to be present." *Bassett* v. *City Bank & Trust Co.*, 115 Conn. 1, 22, 160 Atl. 60.

There is no error in the denial of the application.

In this opinion the other judges concurred.