In re Athanasia CUSHING, Debtor.

Athanasia Cushing, Plaintiff,

v.

Corporate America Federal Credit Union, Defendant.

Bankruptcy No. 97–52002.
Adversary No. 97–5153.

United States Bankruptcy Court,
D. Connecticut.

Mar. 15, 1999.

James M. Nugent, Harlow, Adams, & Friedman, P.C., Milford, CT, for debtor.

Seymour N. Weinstein, Stamford, CT, for Corporate America.

## MEMORANDUM AND ORDER DETERMINING VALIDITY OF EQUITABLE LIEN

ALAN H. W. SHIFF, Chief Judge.

The isolated issue here is whether a note which the debtor/plaintiff executed pursuant to a mortgage agreement creates an equitable lien against the debtor's residence in the amount of a credit card debt she owed to the defendant/mortgage lender.

### BACKGROUND

The parties have stipulated to the following. Athanasia Cushing (the "debtor"), submitted a June 23, 1995 credit card application to Corporate America Federal Credit Union ("Corporate America") which it approved. She subsequently granted Corporate America a $15,000 second mortgage on her residence. The note securing the mortgage stated that "the security interest in the loan secures the loan described. . . . It also secures . . . any other amounts you owe the credit union now or in the future . . . ."[1] ("dragnet clause"), see discussion *infra* at 640–42. On November 25, 1996, the debtor filed a chapter 7 bankruptcy petition. Her discharge entered on April 21, 1997. On October 27, 1997, she commenced the instant adversary proceeding against Corporate America, alleging that it sought to enforce a lien against her residence in violation of her chapter 7 discharge. *See* § 524(a). Corporate America asserts the defense that its lien arose in equity from the dragnet clause in the amount of the debtor's $25,000 credit card debt. Corporate America concedes that it has the burden of proof as to the validity of its equitable lien.

---

1. That language appeared in small print on the reverse side of the note.

### DISCUSSION

Corporate America argues that unless this court imposes an equitable lien against the debtor's residence in the amount of her credit card debt, she will be unjustly enriched. The argument is unavailing.

■ Generally, an equitable lien is an "equitable remed[y] available to vindicate restitutionary claims [generally arising from circumstances where] a person . . . has been unjustly enriched at the expense of another. . . . The range of circumstances causing unjust enrichment to be held 'unjust' is nearly boundless and the subject of numerous treatises." JEFFREY DAVIS, EQUITABLE LIENS AND CONSTRUCTIVE TRUSTS IN BANKRUPTCY; JUDICIAL VALUES AND THE LIMITS OF BANKRUPTCY DISTRIBUTION POLICY, 41 Florida L.Rev. 1, 3 (1989). It is available, for example, when the claimant "can establish some connection between the benefit conferred and an identifiable asset held by the [respondent] at the time restitution is sought," *id.* at 4. The imposition of an equitable lien gives the claimant a lien on the particular asset. Equitable remedies are, however, unavailable where there is an adequate remedy at law. *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 661 (2nd Cir.1997).

■ "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re Bridgeport Jai Alai*, 215 B.R. 651, 656 (Bankr.D.Conn.1997). No federal interest has been asserted; indeed, the mortgage agreement provided that "[t]he state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located." *Mortgage* at ¶ 13. The subject property is located in Weston, Connecticut. Accordingly, Connecticut law applies.

■ Connecticut generally recognizes the concept of equitable liens. *See, e.g., Bas-*

*sett v. City Bank & Trust Co.*, 116 Conn. 617, 165 A. 557 (1933) ("In order that [an equitable lien] may arise, the agreement must deal with some specific property, such as a tract of land ... and identify it or so describe it that it can be identified."), *citing* 3 POMEROY'S EQUITY JURISPRUDENCE (4TH ED.) § 1234, 1235. The issue here centers on whether Connecticut law would recognize an equitable lien emanating from a dragnet clause.[2] No Connecticut authority has been provided, and none has been found, holding that an equitable lien may emanate from a mortgage note dragnet clause. Nonetheless, there is *dictum* from the Connecticut Supreme Court which suggests that Connecticut would enforce an equitable lien arising from such a dragnet clause so long as there is supportive extrinsic evidence that an equitable lien was intended by the parties.

■ Corporate America, however, argues that extrinsic evidence is inappropriate because the parties' intent must be gleaned from the documents that they signed. That argument is not persuasive. In *Sims v. Honda Motor Co., Ltd.*, 225 Conn. 401, 414–415, 623 A.2d 995 (1993), the Connecticut Supreme Court, considering the enforcement of a general release, recognized in the context of challenges to the validity of dragnet clauses in mortgage notes an exception to the parol evidence rule, and stated:

> analogous [dragnet clause] cases from other jurisdictions support our conclusion that extrinsic evidence of intent is appropriately considered in determining the scope of a general release.
>
> . . .
>
> We recognize that our conclusion is a departure from the general rule of contract construction that unambiguous contract provisions are to be given their plain

meaning without reference to evidence outside the four corners of the agreement.

Thus, assuming *arguendo* that Connecticut would recognize that an equitable lien might arise out of a mortgage note dragnet clause, it would require independent corroborating evidence of the parties' intent. *Sims, supra*, 225 Conn. at 415, 623 A.2d 995.

The extrinsic evidence requirement is supported by sound policy considerations:

> A dragnet clause often ... is included in standard mortgage forms drafted by the mortgagee. The mortgagor may well be unaware of either its presence, or its implications. Mortgages containing future advances clauses have been denominated Anaconda mortgages and are well named thus, as by their broad and general terms they enwrap the unsuspecting debtor in the folds of indebtedness embraced and secured in the mortgage which he did not contemplate. A literal interpretation of the clause would allow the bank to turn to the real estate subject to the mortgage any time the mortgagor falls behind on a personal loan, misses a payment on an automobile loan, or overdraws his checking account at the bank. . . . Since application of dragnet clauses in mortgages in accordance with their literal terms might often work forfeitures upon unsuspecting mortgagors, we hold that the language of a dragnet clause alone is not conclusive of the parties' intent where it is claimed that the clause covers loans made subsequent to the loan initially secured by the mortgage containing the dragnet clause.

*Canal National Bank v. Becker*, 431 A.2d 71, 74 (Me.1981) (citations and internal quotation marks omitted).

Corporate America argues that the debtor's credit card application provides indepen-

---

2. A 'dragnet clause' is a mortgage provision which purports to make the real estate security for other, usually unspecified, debts and which frequently is included in the printed language of mortgages drafted by the mortgagee. A typical 'dragnet clause' provides that the mortgage secures the payment of any and all claims or demands which the said mortgagee may have or hold against the mortgagors or either of them.

*Sims v. Honda Motor Co., Ltd.*, 225 Conn. 401, 415 n. 11, 623 A.2d 995 (1993) (citations and internal quotation marks omitted). Such clauses are also known as anaconda, blanket, conglomerate, cross-collateralization, omnibus, open-end, and other-indebtedness clauses. *See* MILTON ROBERTS, ANNOTATION: DEBTS INCLUDED IN PROVISION OF MORTGAGE PURPORTING TO COVER ALL FUTURE AND EXISTING DEBTS, 3 A.L.R.4th n. 3 (1998 Supp.).

dent evidence that the debtor knew and understood that her credit card debt would be secured pursuant to the note. However, that application more persuasively supports the debtor's position because the debtor signed it five months before she executed the mortgage and note. Moreover, Corporate America concedes that it could have protected itself by requiring security not only for the mortgage loan, but also for any then-existing credit card debt.

■ Even apart from Corporate America's failure to provide extrinsic evidence, the dragnet clause fails to satisfy the general requirements of an equitable lien. As a matter of equity, the debtor will not be unjustly enriched by a finding that the dragnet clause's security agreement is unenforceable, because Corporate America had already granted her an unsecured line of credit. As to antecedent debt, Corporate America had an adequate remedy at law, i.e., as noted, it could have required security for that debt. Moreover, Corporate America's attempt to secure future credit card debt violates Connecticut General Statute § 49–2, which regulates open-end mortgages and consumer revolving loans by prohibiting as a matter of public policy "access to the [collateral] by credit card or any similar instrument or device...."[3]

Accordingly, the dragnet clause is deemed invalid and unenforceable, and it is **SO ORDERED.**

---

3. Corporate America concedes that that statute applies to the mortgage, but argues that it does not apply to the note. But the first page of the mortgage specifically references the note. The mortgage and note therefore must be read together.